```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3        Before The Honorable Sallie Kim, Magistrate Judge

 4

 5  MECHANICAL CONTRACTORS          )
    ASSOCIATION OF MEMPHIS, INC.,   )
 6  et al.,                         )
                                    )
 7           Plaintiffs,            )
                                    )
 8  vs.                             )   No. 19MC80226-SK
                                    )
 9  SHELBY COUNTY, TENNESSEE,       )
    et al.,                         )
10                                  )
             Defendants.            )
11  _____)

12                                      San Francisco, California
                                        Monday, December 9, 2019
13
     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
14              RECORDING 10:02 - 10:15 = 13 MINUTES

15  APPEARANCES:

16  For Plaintiffs:
                              Murphy, Pearson, Bradley,
17                              Feeney
                              88 Kearny Street, 10th floor
18                            San Francisco, California
                                94108
19                       BY:  JOSEPH S. LEVERONI, ESQ.

20                            McNabb, Bragorgos, Burgess
                                & Sorin
21                            81 Monroe Avenue, 6th Floor
                              Memphis, Tennessee 38103
22                       BY:  NICHOLAS E. BRAGORGOS, ESQ.
    For Defendants:
23                            Burton Employment Law
                              1939 Harrison Street
24                            Suite 400
                              Oakland, California 94612
25                       BY:  JOCELYN BURTON, ESQ.
```

*Echo R*

**EXHIBIT**

*tabbies* 6

2

1  Transcribed by:            Echo Reporting, Inc.
                              Contracted Court Reporter/
2                             Transcriber
                              echoreporting@yahoo.com

```
                                                              3
 1  Monday, December 9, 2019                          10:02 a.m.
 2                     P-R-O-C-E-E-D-I-N-G-S
 3                            --oOo--
 4            THE CLERK:  Calling civil case 19-MC-80226,
 5  Mechanical Contractors Association of Memphis, Inc., et al.,
 6  versus Mason Tillman Associates, Limited.
 7       Counsel, please state your appearances, beginning with
 8  those in the courtroom.
 9            MR. LEVERONI:  Good morning.  Joe Leveroni,
10  Murphy, Pearson, Bradley and Feeney, local counsel for
11  Petitioner.
12            THE COURT:  Good morning.
13            MS. BURTON:  Jocelyn Burton here for Mason
14  Tillman.
15            THE COURT:  Good morning.
16       And on the telephone?
17            MR. BRAGORGOS (Telephonic):  Nick Bragorgos,
18  McNabb, Bragorgos, Burgess and Sorin on behalf of Shelby
19  County.
20            THE COURT:  Okay.  Good morning.
21            MR. BRAGORGOS:  Mechanical Contractors
22  (indiscernible) Shelby County.  Excuse me.
23            THE COURT:  Thank you.
24       So Ms. Burton, let me just ask you a question up front,
25  and that is, does MTA agree to transfer to the Western
```

4

District of Tennessee -- because there was response in your opposition brief about their motion to transfer under Rule 45?

    MS. BURTON:  We -- we don't -- we don't agree with that.

    THE COURT:  Okay, all right.  Why didn't you address that in your brief?  I'm kind of puzzled that it wasn't -- you didn't mention anything about it.

    MS. BURTON:  Well we were busy trying to get -- deal with the documents at the --

    THE COURT:  Okay.

    MS. BURTON:  Yeah.

    THE COURT:  Mr. Bragorgos, let me ask a question.  You've asked for attorney's fees and costs, but you haven't given me the amount that you've already incurred.  Is there a reason why you didn't include that in your opening papers?

    MR. BRAGORGOS:  That's an oversight on my part, Judge.  That's all.

    THE COURT:  Okay.  The problem is that I'm not going to grant a motion for attorney's fees and costs without actually seeing the amount and giving the other side an opportunity to respond.  I will tell you that no matter what the decision is, I'm going to make MTA pay for those attorney's fees and costs that were incurred, because you had to show up in person, there was no response and you had

1 to have travel costs and show up for the deposition and pay
2 the court reporter and things like that.
3     But I'm going to have to have you submit something
4 specifically so that MTA has due process and the ability to
5 look at the numbers and say whether or not they think that
6 they're going to actually -- whether they think that they
7 are reasonable for the situation.
8     So just to let me know, that's the process I'm going to
9 have for the attorney's fees and costs, associated with
10 coming here in person to try to take the -- enforce the
11 subpoena.
12     MR. LEVERONI: That's understood. One point of
13 clarification. We included in an affidavit submitted with
14 the reply --
15     THE COURT: Okay.
16     MR. LEVERONI: -- the -- this is MCA's reply --
17     THE COURT: Okay.
18     MR. LEVERONI: -- in support of the motion to
19 compel. It is my declaration.
20     THE COURT: Yes, okay.
21     MR. LEVERONI: And at the end it includes the
22 figures for both Mr. Bragorgos and myself.
23     THE COURT: Okay, okay. I see this. So what --
24 let me make sure I have this correctly. So again, bringing
25 up something in reply doesn't give the other side a chance

```
                                                              6
 1  to respond to it, so that's why I'm going to give them a
 2  chance to respond.
 3            MR. LEVERONI:  Understood.
 4            THE COURT:  But let me look at those numbers for a
 5  minute.  Paragraph five, "Tennessee Counsel, 16 hours,
 6  travel to San Francisco costs."  So that's the number there
 7  for paragraph five; right?
 8            MR. LEVERONI:  Yes.
 9            THE COURT:  And paragraph six, Mr. Leveroni, this
10  is your costs and fees?
11            MR. LEVERONI:  Yes.
12            THE COURT:  That's the part I'm not sure I'm going
13  to enforce, but the part for Mr. Bragorgos, I will.
14            MR. LEVERONI:  Understood.
15            THE COURT:  But Ms. Burton, I will give you an
16  opportunity to respond to it.
17            MS. BURTON:  Okay.
18            THE COURT:  Because it's clear that he came here
19  because there was no response from MTA thinking that he
20  should be able to take a deposition and get the documents
21  and no one told him otherwise.  Okay.
22       So how much time, Ms. Burton, do you want to respond to
23  that?
24            MS. BURTON:  Could I have at least a week?
25            THE COURT:  Yeah, sure.  I'll give you until
```

1  December 16th.
2           MS. BURTON:  Okay.
3           THE COURT:  So Ms. Burton, does MTA concede that
4  service was valid?
5           MS. BURTON:  Well it's unclear whether service was
6  valid.  I know that -- I mean there is an issue -- there --
7  they left it on the desk with the law clerk, with an intern.
8  She was not authorized to accept service, but I don't know
9  if she notified them whether she was authorized to accept
10 service.
11          THE COURT:  So let me put the question in a
12 different way.  You don't have any specific facts in
13 evidence before me to contest the validity of service; is
14 that correct?
15          MS. BURTON:  Well the only thing we did explain is
16 that it was left with the law clerk and that's what we --
17 that's all I know.
18          THE COURT:  Okay.  All right.  So my take on that
19 is that that's not sufficient -- those aren't sufficient
20 facts to contest service.  There's no law showing to me that
21 that's incorrect service.  I have no reason to believe it's
22 invalid.  So I'm -- based on what I have before me, I find
23 that the service was valid.
24          MS. BURTON:  Okay.
25          THE COURT:  Okay.  So Mr. Bragorgos, let me ask

1  you a question about the underlying litigation.  Is there a
2  protective order in place in that Tennessee litigation?
3           MR. BRAGORGOS:  No, Judge, there is not.  We are
4  certainly willing to enter into one to make that very clear,
5  but at this time there is not.
6           THE COURT:  Okay.  So I would direct the parties
7  to look at the model stipulated protective order of the
8  Northern District of California.  Because in that situation,
9  we have a model order.  We have two versions.  One is just
10 confidentiality, one is attorney's eyes only when there are
11 competitors involved.  I don't think there are competitors
12 involved in this case, but I don't know enough about the
13 underlying case to know whether there are competitors or
14 not.
15      But I would tell you that my default position is to
16 allow some kind of protective order.  Even if I have a
17 protective order here, the (indiscernible) information is
18 disclosed to the moving party.  It would be under the terms
19 of that model protective order, unless I hear that there's a
20 competitor involved.
21      So someone tell me, Ms. Burton, do you think there's a
22 competitor involved?
23           MS. BURTON:  Well yes, there will be -- probably
24 -- competitors involved, because they will -- this is a very
25 -- this is an industry in which there are very few active

9

1  players.  Ms. Ramsey informed me that there are
2  approximately 10 organizations --
3           THE COURT:  She said nine in her declaration.
4           MS. BURTON:  Nine, nine.  That do these studies.
5           THE COURT:  right.
6           MS. BURTON:  And generally what will happen is the
7  escorts will be one of those other nine competitors.
8       And I think -- what we didn't put in the brief, because
9  we hadn't done it yet.  We produced almost 6000 pages of
10 documents to them.  The only --
11          THE COURT:  When was the production made?
12          MS. BURTON:  About a week after the -- we filed
13 our brief.
14          THE COURT:  I see.
15          MS. BURTON:  On about November 14th.
16          THE COURT:  Okay.
17          MS. BURTON:  So there are only two remaining
18 classes of documents which we have concerns about, and one
19 are the documents pertaining to the identity of some people
20 who may have provided information regarding the anecdotal
21 survey evidence.  And two, is information that is
22 proprietary.  And those include things like internal manuals
23 regarding how to do the interviews, templates for drafting
24 documents.  Those types of things.
25          THE COURT:  Okay.  Let me ask Mr. Bragorgos.  Mr.

10

Bragorgos, are there any competitors involved in this case?

MR. BRAGORGOS: No. Absolutely not.

THE COURT: Are your expert witnesses drawn from competitors of MTA?

MR. BRAGORGOS: No. My expert witness is a man named George Lanoud, L-A-N-O-U-D.

THE COURT: Okay. Can you spell that again?

MR. BRAGORGOS: L-A-N-O-U-D. He's a professor at the University of Maryland and he has appeared at depositions. Our expert deadline has not come yet, but we have no intention of retaining, under the company, that may be considered a competitor. There are no competitors involved in this case. It's a two-party case. It's my client, Mechanical Contractor and it's versus Shelby County. And no, I don't see any scenario where a competitor will ever be involved in this case.

THE COURT: Okay. So let me tell me what I'm -- what I'm planning to do. I think that MTA actually technically waived its objections under Rule 45, because it didn't file them in a timely manner. But I am considering this issue of confidential materials and it sounds like, Mr. Bragorgos, that you are willing to have some kind of confidentiality order and I would say that the order that the order that I will put into place, for the production of MTA documents, it's just the standard civil protective order

*Echo Reporting, Inc.*

that's on the website for the Northern District of California.  I don't know if you're familiar with it, or if you've seen it, but this is pretty much what we do.  And I wouldn't have an attorney's eyes only designation.

There are two kinds of protective orders.  One is just a standard civil one, and one is for competitor information with an attorney's eyes only designation.  In this case it sounds like just a standard order is the right one.

What I'll also say to you though, Ms. Burton, is to the extent that MTA doesn't like that, or wants to contest that, once you get into -- once the material is produced to the other side, if you want to ask the court in Tennessee to provide additional protections, for example, let's say that Mr. Bragorgos does go out and find someone who is a straight up competitor as an expert witness later on, then you're certainly within your rights to go to Tennessee and ask them to give them -- give you additional protection over your materials.  But there will be production and it will be under some kind of protective order.

So I'm going to give you the option of taking a look at that order, and then letting me know also by January -- by December 16th whether or not you agree to it, or whether you have any changes that you want to make.  It's a one size fits all.  It works pretty well for most cases, but every once in awhile I'll get a case where people say we need to

12

make some modifications.

So if you meet and confer and you disagree and you want to give me competing proposals, that's fine, as long as you give them to me in redlined version. In other words, relined against the standard model protective order. And then also give me word versions of your competing proposals. But the homework that you have is that you're going have to meet and confer -- take a look at it, meet and confer and see whether you both agree to the model protective order, or if you have any changes that you want to make. Sometimes people want to make changes and they agree on the changes and they just give me one order and I'll look at it and if I think it makes sense I'll sign it. But you might have option three, which is each side will have competing proposals with different changes. But the most important thing is for me to be able to see a redline copy and to have it in word, so that whatever I choose I can just adopt pretty quickly.

MS. BURTON: Well the only concern I have is, I would like the Court to consider the red -- the attorney's eyes only, with regard to at least the third party individuals.

THE COURT: I would not do that in this case. There's no reason for that. We deal with this kind of stuff all of the time in our court, and I will tell you that the

13

court system really disfavors keeping information confidential. And attorney's eyes only makes no sense, unless there's a competitor issue or peoples lives are at risk. So I don't see that in this situation. I understand that you're concerned about people giving anecdotal information, but I'm talking about people under the threat of being killed if they were to disclose information or keep information confidential and that kind of situation.

I've had cases where people have filed suit as a Jane Doe or John Doe and said, "If I reveal my identity, I or my family will be killed." In that case, attorney's eyes only for something like that.

But that's the plan for December 16th. Okay?

MR. LEVERONI: Understood.

THE COURT: So it's going to mean that you guys have to meet and confer and talk about the protective order.

MS. BURTON: Okay.

MR. LEVERONI: Understood, your Honor.

THE COURT: All right. But otherwise, I am going to require Mason Tillman Associates to disclose the information that's in the subpoena. And Mr. Bragorgos, are you planning to take a deposition again, or you just want the documents?

MR. BRAGORGOS: Well Judge, we would like to take Ms. Ramsey's deposition for a limited purpose. We can

```
                                                         14
 1  discuss that, you know, with Mrs. Burton and we'll do that
 2  out there, of course, but no, we want the documents,
 3  clearly.
 4           THE COURT:  Right.
 5           MR. BRAGORGOS:  They're very important to our
 6  case.
 7           THE COURT:  Well under the -- under willful reply,
 8  you really -- you can show up and get the document in
 9  person, but if you're going to get them in advance and then
10  take the deposition, you can work that out as well.  And if
11  there's a fight about that, let me know.
12           MS. BURTON:  Okay.
13           THE COURT:  Because I'll impeach a Rule 45.  I
14  mean that's my default position is Rule 45.
15           MS. BRAGORGOS:  (Indiscernible) Rule 45.
16           THE COURT:  Okay.  Is there anything else we
17  should talk about this about this motion?  Have I forgotten
18  anything or left anything out?
19           MS. BRAGORGOS:  Judge, thank you for letting me
20  appear by telephone.  I truly appreciate the courtesy.
21  Thank you, your Honor.
22           THE COURT:  Okay.
23           MS. BRAGORGOS:  I'm finished.
24           THE COURT:  Ms. Burton, do you have anything?
25           MS. BURTON:  That's it, thank you.
```

```
                                                              15
 1          THE COURT:  Okay.  So I'll wait until December
 2  16th to hear from folks, then I'll tell you what my thinking
 3  is and then I'll issue a written order as soon as I get the
 4  protective order from you folks.  Okay?
 5          MR. LEVERONI:  Thank you.
 6          MS. BURTON:  Thank you.
 7          MR. BRAGORGOS:  Thanks, Judge.
 8       (Proceedings adjourned at 10:15 a.m.)
 9
10
...
25
```

*Echo Reporting, Inc.*

16

# CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

*[signature]*

Echo Reporting, Inc., Transcriber

Thursday, December 19, 2019